UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NELSON VARGAS,

             Petitioner,

- against -

FREDRICK MENIFEE, Warden,

             Respondent.

REPORT AND RECOMMENDATION

04 Civ. 2223 (RCC) (RLE)

**To the HONORABLE RICHARD CONWAY CASEY, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* petitioner, Nelson Vargas ("Vargas"), a federal prisoner at the Federal Correctional Facility in Otisville, New York, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Pet.") which was received by the *Pro Se* Office in this District on February 26, 2004. Vargas is now a prisoner in the Big Sandy United States Penitentiary in Inez, Kentucky. He filed the instant petition to challenge a disciplinary proceeding in which a Discipline Hearing Officer ("DHO") concluded that he had used narcotics in violation of the Bureau of Prisons ("BOP") disciplinary code. Pet. ¶ 3. As a result of that finding, a sentence was imposed on May 12, 2003, including thirty days disciplinary segregation, a loss of forty days of good conduct time, and a loss of two years of visiting and commissary privileges. **Id**. ¶ 4.

Vargas contends that his due process rights were violated because 1) the chain of custody for the urine sample which led to the charge was defective; 2) the committee that referred the charge to the DHO was improperly constituted; and 3) he was not permitted to present a video surveillance tape at the hearing. For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

Vargas was convicted of conspiracy to violate the narcotics laws under 21 U.S.C. § 846. Declaration of Joyce Horikawa, Attorney Advisor, Federal Bureau of Prisons, July 28, 2004 ("Horikawa Decl."), Exh. A.  He was sentenced, in October 1991, to 480 months of imprisonment and five years of supervised release.  **Id**.

On April 14, 2003, Vargas provided a urine sample for drug analysis.  **Id**., Exh. B.  A chain of custody form states that the sample was collected, labeled, and sealed according to the required collection procedures.  **Id**.  Vargas's signature appears on the form, which states that "[T]he inmate shall verify that the specimen numbers . . . on the Chain of Custody form, on the peel-off barcode, and on the numbered label to be affixed to the Urine Surveillance Log are identical."  **Id**.  The form also states that the inmate "shall be asked to initial the security seal and to read and sign the Inmate Certification statement."  **Id**.  Vargas concedes that he signed the form, Petitioner's Affidavit ("Vargas Aff.") ¶¶ 19-20, but states that he believes his urine sample was contaminated by another inmate because after he gave his urine sample, and before it was sealed, he saw the urine collection officer, Officer Barrett ("Barrett"), leave the area where all of the samples were kept in order to let other inmates into the area.  **Id**. ¶ 14.  He then saw other inmates go over to the area where the urine samples were kept, and believes the samples could have been tampered with or switched.  **Id**. ¶¶ 15-18.  Vargas explains that he did not report this at the time "because he is not a staff member and it was not his responsibility to secure the urine specimens."  Memorandum of Law in Support of 28 U.S.C. § 2241 ("Vargas Mem.") at 3-4.

On April 18, 2003, the National Toxicology Laboratories determined that Vargas's urine sample tested positive for opiates, specifically morphine.  Horikawa Decl., Exh. C.  Medical staff

reported that Vargas had not been prescribed any medication that would cause the particular laboratory result.  **Id**., Exh. D.  On April 21, 2003, prison officials issued an incident report, charging Vargas with using narcotics not prescribed by medical staff in violation of BOP disciplinary code.  **Id**., Exh. E.  After being advised of his rights, Vargas stated that the report was a mistake and should be investigated.  **Id**.  He requested a staff member to represent him.  **Id**.

On April 22, 2003, Vargas appeared before the Unit Discipline Committee ("UDC") for an initial hearing.  **Id**.  He did not make a statement, but again requested a staff representative.  **Id**.  The UDC referred the charge to the DHO for disposition.  **Id**.  Correctional Counselor J. Gushue ("Gushue") advised Vargas of his rights before the DHO.  **Id**., Exh. F.  Vargas reports that in preparing for the DHO hearing, he met with the staff representative assigned to his case and instructed him to review the video surveillance tape from the day he gave the sample and present the tape to prove that his urine was left unattended with other inmates in the area.  Vargas Aff. ¶ 27.

On May 12, 2003, the DHO held Vargas's hearing.  Horikawa Decl., Exh. I.  The Court has not been provided with a transcript of the hearing, and must therefore rely on the submissions of the parties.  For the most part, the parties agree on what took place at the hearing.  According to the DHO Report following the hearing, Vargas's staff representative said that he had investigated the taking of the urine sample and had talked with Barrett, who told him that another officer, Gushue, had also been present that day and had helped supervise the urine samples.  **Id**.  Vargas's staff representative also reported that he believed procedures had been followed appropriately.  **Id**.  The staff representative asked for leniency for Vargas, as it was his first

charge in three years. **Id**. The report also indicates that Vargas made a statement and said that the positive test for opiates was a mistake. **Id**. He stated that Barrett had left the bottle unattended and that, while he did not believe that the officer did it, he thought that another inmate could have put something in his bottle. **Id**.

Vargas's report of the hearing contends that once his staff representative told him that he had not reviewed the video surveillance tape as requested, Vargas told the DHO officer what he had seen that day. Vargas Aff. ¶ 30. He says he asked that the tape be reviewed, but the request was denied. **Id**. Respondent has submitted a declaration from the hearing officer, John Banks ("Banks Decl."), that he does not recall that Vargas made a request for the tape at the hearing. Banks Decl. ¶ 4. He, however, does recall Vargas's assertion that Barrett had left the samples unattended and his speculation that another inmate had put something in his urine sample. **Id**. ¶ 3. Banks states that, had Vargas made the request for the tape, he would have documented that fact, as well as his determination as to whether the tape was still in existence and whether it was relevant. **Id**. ¶ 5. He said that, had the tape been determined relevant, he would have stopped the hearing to review it before making his decision. **Id**. ¶ 6.

In his written decision, issued June 13, 2003, Banks found that Vargas had committed the charged violation. Horikawa Decl., Exh. I. Banks found the staff members' statements warranted greater weight than Vargas's claims. **Id**. He found that the staff members "would have nothing to gain by not being truthful. In fact, they have a responsibility to do so." **Id**. He found that, in contrast, Vargas had "a great deal to gain by not being truthful in the hope this incident report would be expunged." **Id**. Banks stated that, as he had explained to Vargas in the hearing, he knew that drugs are highly valued in the corrections system and therefore "finds it

4

VERY hard to believe [that] another inmate would first be willing to place drugs in a urine specimen bottle of another inmate even if he had the opportunity, which in this case was impossible." **Id**.

     Vargas exhausted his administrative remedies by appealing the DHO decision to the Regional Director. **Id**., Exh. J.  He argued that the chain of custody of his urine sample was broken when Barrett left the room. **Id**.  He also asserted that his due process rights were violated when Gushue served as a member of the UDC which referred the charge to the DHO, when Gushue had also been a witness to the monitoring procedure. **Id**.  On August 1, 2003, the Regional Director denied Vargas's appeal and found that the DHO's conclusion was based upon the greater weight of the evidence. **Id**.  Because Gushue was not a witness to the incident, in the sense that he did not sign the chain of custody form, and did not report the incident, the Regional Director found that Vargas's due process rights had not been violated when Gushue then served on the UDC which referred Vargas's charge to the DHO. **Id**.  The Regional Director also found that the chain of custody was not broken because the form, signed by Vargas, established the chain of custody, not the staff statements. **Id**.

     Vargas appealed the Regional Director's decision to the BOP Central Office. **Id**., Exh. K. On November 5, 2003, the Central Office denied the appeal and agreed with the Regional Director's decision. **Id**.  The Central Office found that there was no indication the chain of custody had been broken, and that Vargas's staff representative, after investigating, had stated that he believed all proper procedures had been followed. **Id**.  The Central Office also found that the UDC had referred Vargas's charge to the DHO, not because Gushue served on the committee and was biased, but because all infractions of that particular severity were required to be referred

5

to the DHO.  **Id**.

### III. DISCUSSION

**A.**     **Due Process Violation**

An inmate need not be afforded the same procedural safeguards as in a criminal prosecution, but must be afforded certain minimum rights to meet the due process requirement of the Fourteenth Amendment.  **Wolff v. McDonnell**, 418 U.S. 539, 566 (1974); *see* **Espinal v. Goord**, 180 F. Supp. 2d 532, 537 (S.D.N.Y. 2002).  These rights include: (1) at least twenty-four hours' written notice of the disciplinary charges; (2) the permission to call witnesses and present evidence if doing so "will not be unduly hazardous to institutional safety or correctional goals;" (3) a fair and impartial hearing officer; (4) assistance, if necessary, from a fellow inmate or staff member; and (5) a written statement of fact finding which supports the disposition and provides the reasons for the ensuing disciplinary action.  **Wolff**, 418 U.S. at 563-70; *see* **Espinal**, 180 F. Supp. 2d at 537.  Three of these are at issue here: Vargas's right to a disposition that is sufficiently supported by the evidence, his right to a fair and impartial hearing officer, and his right to present the video surveillance tape.

**1.**     **Chain of Custody Claim**

Vargas's claim that the chain of custody involving his urine sample was broken is essentially a claim that the DHO's disposition of the charge against him was not supported by sufficient evidence.  The standard for reviewing the sufficiency of evidence in prison disciplinary hearings is "extremely tolerant" and satisfied by some "reliable evidence."  **Sira v. Morton**, 380 F.3d 57, 69 (2d Cir. 2004) (*citing* **Luna v. Pico**, 356 F.3d 481, 488 (2d Cir. 2004), and **Taylor v. Rodriguez**, 238 F.3d 188, 194 (2d Cir. 2001)).

Here, Banks's final decision that Vargas had committed the charged violation meets this standard. The fact that the tested urine sample contained narcotics was clearly established. Banks credited the chain of custody form and the statements of the staff representative over Vargas's statements that he believed the urine sample had been tampered with. The fact that Vargas signed the chain of custody form makes his later concerns about the sample less credible. He argues he signed the form because it was not his responsibility to maintain custody of the samples, but the form clearly gives the inmate the responsibility to verify that the sample is his. "A hearing officer's resolution of a conflict that involves a determination of witness credibility is accorded particular deference." **Simon v. Selsky**, 2002 WL 1205737, at *5 (S.D.N.Y. Mar. 12, 2002). The DHO decision is supported by some evidence and therefore, is not a violation of Vargas's rights.

### 2. Right to Unbiased Hearing Officer

"The degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." **Francis v. Coughlin**, 891 F.2d 43, 46 (2d Cir. 1989). "[D]ue process requires only that the hearing officer not be 'a hazard of arbitrary decisionmaking.'" **Espinal**, 180 F. Supp. 2d at 539 (*quoting* **Wolff**, 418 U.S. at 571). *See* **Powell v. Ward**, 542 F.2d 101, 102-03 (2d Cir. 1976) (prison official who directly participated in or witnessed acts complained of may be insufficiently impartial).

Here, Vargas's staff representative stated at the hearing that Gushue was present when Vargas's sample was taken and assisted Barrett in maintaining custody of the samples while Barrett was temporarily absent from the area. Gushue also was a member of the UDC which reviewed Vargas's charge at his initial hearing and subsequently referred his charge for further

review by the DHO. However, as the Central Office pointed out in reviewing Vargas's claim on appeal, all charges of greatest severity are referred to the DHO after an initial hearing. *See* 28 C.F.R. § 541.15. While Gushue was marginally involved in both the incident and in adjudicating Vargas's claim, the regulations essentially remove any discretion in cases such as Vargas's at the UDC stage. Therefore, his presence on the UDC did not violate Vargas's due process rights.

### 3.     Right to Present Video Tape

A hearing officer may rightfully refuse to call a witness or allow a prisoner to present certain evidence if the refusal is justified, **Scott v. Kelly**, 962 F.2d. 145, 146-47 (2d Cir. 1992), and the burden is on the prison officials to "prove the rationality of the decision." **Moye v. Selsky**, 826 F. Supp. 712, 717 (S.D.N.Y. 1993). *See* **Fox v. Coughlin**, 893 F.2d. 475, 478 (2d Cir. 1990); **Bass v. Grottoli**, 1995 WL 565979, at *5 (S.D.N.Y. Sept. 25, 1995) ("Prison officials must provide an explanation of their decision not to permit a prisoner to call a witness or present evidence–either on the record of the hearing or in a later proceeding–and such an explanation will satisfy the due process clause if it is 'logically related to preventing undue hazards to institutional safety or correctional goals.'") (*quoting* **Ponte v. Real**, 471 U.S. 491, 497 (1985)).

The problem here is not whether the hearing officer made an improper decision as to the relevance of the video tape evidence, but that there is no documentation of Vargas's request for the tape either to his staff representative or at the hearing. There is no transcript of the hearing. Vargas's affidavit and that of the hearing officer, Banks, directly contradict each other. Vargas claims he made the request both to his staff representative and again at the hearing. Banks states that he does not recall that Vargas requested the tape at the hearing and that the procedures

require him to note such a request and make a ruling as to the relevance of the evidence. Neither Vargas nor the respondent has sought to provide an affidavit from the staff representative to corroborate their side.

If Vargas did not request the tape either before or at the hearing, there would clearly be no due process violation. *See* **Ramirez v. Selsky**, 817 F. Supp. 1090, 1101 (S.D.N.Y. 1993) (no due process violation where prisoner claimed he requested a particular witness but the transcription of the hearing did not contain evidence of the request); **Piggie v. McBride**, 277 F.3d 922, 925 (7th Cir. 2002) ("if Piggie failed to make such a request [for the videotape] either before or at the hearing, then the [disciplinary board] could not have denied him due process by not considering the request"). The record does not contain any definitive evidence that Vargas made the request. As the Court has already discussed, Banks's decision to credit the chain of custody form and the staff statements over Vargas's claims about what happened on the day his urine sample was taken meets the "some evidence" standard. Therefore, the Court finds there has been no violation of due process.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Vargas's petition for writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard Conway Casey, 500 Pearl Street, Room 1350, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: August 29, 2006**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

Petitioner, *pro se*
Nelson Vargas
18003-054
U.S. Penitentiary, Big Sandy
P.O. Box 2068
Inez, KY 41224

Counsel for Respondent
Melanie R. Hallums
Assistant United States Attorney
U.S. Attorneys Office
86 Chambers Street
New York, NY 10007

10